IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOYCE A. LEGGETTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:03-CV-2909-D |
| VS. | § | |
| | § | |
| WASHINGTON MUTUAL BANK, FA, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action asserting a state-law claim for wrongful foreclosure, plaintiff's motion to remand presents the question whether exercising federal question jurisdiction would disturb a congressionally approved balance of federal and state judicial responsibilities. Concluding that it would, the court holds that it lacks subject matter jurisdiction and remands the case to state court.

I

Plaintiff Joyce A. Leggette ("Leggette") sues defendants Washington Mutual Bank, FA ("WMB") and Mortgage Electronic Registration Systems, Inc. (collectively, "WMB"), alleging that they are liable for wrongful foreclosure based on violations of three federal regulations respecting mortgage servicing requirements for FHA loans.[1] After she filed suit in Texas state

---

[1]A loan insured by the Federal Housing Administration, a component of the Department of Housing and Urban Development.

court, WMB removed the case based on this court's federal question jurisdiction, and it later moved for summary judgment.  Several months after WMB filed the summary judgment motion, Leggette moved the court to abstain[2] and remand.[3]

Leggette purchased a home in Dallas, Texas using the proceeds of an FHA loan that she obtained from WMB.  To secure the loan, Leggette executed a deed of trust that provides, *inter alia*, that (1) WMB "may, except as limited by regulations issued by the Secretary [of the Department of Housing and Urban Development ("HUD")], in the case of payment defaults, require immediate payment in full . . . [,]" Pet. Ex. A at 4, ¶ 9(a) (emphasis omitted), and (2) "In many circumstances regulations issued by the Secretary will limit [WMB's] rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid[,]" *id.* at 5, ¶ 9(d) (emphasis omitted).  Leggette defaulted on the mortgage, and WMB notified her that the loan had been

---

[2]Leggette uses the term "abstain" in conjunction with the term "remand" and seeks the same relief: that the court remand the case to state court based on the absence of federal question and diversity jurisdiction.  She does not, for example, seek abstention under an alternative, and more typical, understanding of that concept.

[3]Because she challenges the court's subject matter jurisdiction, it is irrelevant that she filed her challenge to removal long after the case was removed.  This court must assure itself at every stage of the litigation that it has subject matter jurisdiction.  *See, e.g., In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings.").

accelerated and that her home would be foreclosed on.

## II

Leggette maintains that the court lacks subject matter jurisdiction because the parties are not completely diverse and her state-law claim does not arise under federal law.

### A

The removal statute, 28 U.S.C. § 1441, should be strictly construed in favor of remand, and WMB bears the burden of demonstrating that federal jurisdiction exists. *See Cantwell v. Deutsche Bank Secs., Inc.*, 2005 WL 2296049, at *2 (N.D. Tex. Sept. 21, 2005) (Fitzwater, J.) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995), and *Manguro v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002)). It is undisputed that the parties are not completely diverse citizens and that Leggette does not assert a cause of action created by federal law. This case is therefore removable only if Leggette's state-law wrongful foreclosure action arises under federal law pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"Ordinarily, the well-pleaded complaint rule governs federal question jurisdiction. Under the rule, '[r]emoval is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction.'"

*Ervin v. Stagecoach Moving & Storage, Inc.*, 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.) (alteration in original) (quoting *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993)).  Leggette is thus the master of her claim, and she may avoid federal jurisdiction by exclusive reliance on state law.  *Cantwell*, 2005 WL 2296049, at *2 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2429 (1987)).  Under the "artful pleading doctrine," this court may, however, disregard the state-law facade of her complaint, thereby bringing to the surface any federal claims lying beneath, "'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'"  *Navarro v. Bell Helicopter Servs., Inc.*, 2001 WL 454558, at *1 (N.D. Tex. Jan. 25, 2001) (Fitzwater, J.) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

The Supreme Court's recent decision in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, ___ U.S. ___, 125 S. Ct. 2363 (2005), makes clear that, although jurisdiction under § 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law[,] . . . [t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction. . . ."  *Id.* at 2366.  In "certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.  The doctrine captures

the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Id.* at 2367 (citations omitted). In these cases "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.*

> [E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Id.* Accordingly, for the court to exercise federal question removal jurisdiction in this case, Leggette's claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

B

The court considers first whether Leggette's state-court petition ("complaint") necessarily raises a stated federal issue

- 5 -

that is actually disputed and substantial.[4]   Leggette styles her
claim as one for wrongful foreclosure, referring to it in her
briefing as a breach of contract claim under Texas law.   Wrongful
foreclosure actions may be brought by persons who suffer "loss or
material injury because of irregularities in the foreclosure sale."
*See Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 158 (Tex.
App. 1994, writ denied).   Leggette contends, however, that WMB
failed to adhere to the terms of the deed of trust.   Because under
Texas law a deed of trust is governed by the same rules of
interpretation that apply to contracts, *see Sonny Arnold, Inc. v.
Sentry Savings Ass'n*, 633 S.W.2d 811, 815 (Tex. 1982), her action
is properly framed as a breach of contract claim, *see In re Keener*,
268 B.R. 912, 922 (Bankr. N.D. Tex. 2001) ("[T]he [plaintiff's]
claim of wrongful foreclosure is misplaced.").   Leggette alleges
that WMB breached the contract on the following three grounds, each
of which asserts a failure to comply with HUD regulations that
implement the National Housing Act ("NHA"), 12 U.S.C. §§ 1701-1750:
before accelerating her loan and noticing the foreclosure, WMB
failed to conduct a face-to-face interview, in violation of 24
C.F.R. § 203.604(b); WMB failed to inform Leggette of other

---

[4]Although WMB bears the burden of demonstrating that removal
is proper in these circumstances, Leggette's failure to file a
reply brief has left unanswered WMB's contentions regarding the
implications for this case of the Court's recent decision in
*Grable*.   *See De Aguilar*, 47 F.3d at 1408 (observing that party
seeking removal bears burden of showing that federal jurisdiction
exists).

available assistance, in contravention of 24 C.F.R. § 203.604(e)(2); and WMB failed to conduct a loss mitigation evaluation, in violation of 24 C.F.R. §§ 203.605, 203.501.

Although the court typically does not look beyond what Leggette has alleged in her complaint in assessing whether her claim raises substantial and disputed issues of federal law, *see Ervin,* 2004 WL 1253401, at *2 (addressing well-pleaded complaint rule), it must make a commonsense determination whether such issues are present in the case, *see Grable*, 125 S. Ct. at 2367-68; *Cantwell*, 2005 WL 2296049, at *3. Each ground of Leggette's wrongful foreclosure claim necessarily turns on WMB's obligations under federal law. The dispute between WMB and Leggette rests entirely on the correct interpretation of three federal regulations, e.g., whether 24 C.F.R. § 203.604(b) requires face-to-face interviews where a loan procurement, but not a loan servicing, branch is located within 200 miles of the mortgagor, and not upon questions of fact, such as whether WMB conducted the interview. WMB's rights respecting loan acceleration and foreclosure under the deed of trust are limited by federal regulations, and if WMB violated these regulations, it may have improperly exercised its contractual rights. Federal issues appear, as in *Grable*, to be the only questions contested in the case. *See Grable*, 125 S. Ct. at 2368. Moreover, as *Grable* noted, the actual dispute about federal law is "'especially'" important, and, in these circumstances, WMB

and Leggette have a genuine and reasonable disagreement over the "'validity, construction, or effect'" of the relevant HUD regulations. *Grable*, 125 S. Ct. at 2369 n.3 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569-70 (1912)).[5]   The court therefore concludes that Leggette's complaint necessarily raises a stated federal issue, actually disputed and substantial.  *Cf. Cantwell*, 2005 WL 2296049, at *5 (concluding that defendants failed to carry burden of demonstrating that plaintiff's petition necessarily raised stated issue of federal law that was actually disputed and substantial).

C

"[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto." *Grable*, 125 S. Ct. at 2367.  The court must decide whether WMB has shown that Leggette's claims are those that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.  To do so, the court will examine

---

[5]WMB maintains that, once the federal issues in this case regarding the lending regulations have been resolved, that is, they are not "subject to 'any controversy respecting their validity, construction or effect,'" federal jurisdiction may not be proper in similar cases. *Grable*, 125 S. Ct. at 2369 n.3 (quoting *Shulthis*, 225 U.S. at 570).  This court notes, however, that in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), the Court rejected the contention that "whether a particular claim arises under federal law depends on the *novelty* of the federal issue." *Id.* at 817 (emphasis added).

the importance of having a federal forum to decide the issue and the effect of exercising jurisdiction on the balance of the federal-state division of responsibilities.  It will also consider the existence *vel non* of a federal private right of action under the NHA.

Invoking "foreclosure by private power [is] a traditional creditor's remedy under state law." *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359 (5th Cir. 1977).  Regulating the foreclosure of real property has traditionally been the province of states, despite federal regulation of some sectors of the lending industry, and "there are state law remedies available to protect mortgagors from unconscionable mortgages." *Id.* at 361.  For example, in *Roberts* the plaintiff purchased a home using a loan financed under a provision of the NHA that encouraged private mortgagees to invest in low income housing and provided for HUD-financed mortgage assistance payments.  After the plaintiff became delinquent in her payments, the Federal National Mortgage Association ("FNMA")——to whom the original lender had assigned the loan——notified her that it was exercising its option to accelerate the debt.  *Id.* at 357. The plaintiff responded by filing a class action, alleging, *inter alia*, that, the exercise of the private power of sale violated Fifth Amendment Due Process Clause because the original lender and FNMA had violated HUD Handbook 4191.1.  *Id.* at 357-58.  In holding that there was no private right of action to enforce the HUD

Handbook, the Fifth Circuit cited *Baker v. Northland Mortgage Co.*, 344 F. Supp. 1385 (N.D. Ill. 1972), for its holding "that the [NHA] and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to a duty owed nor remedy for failure to follow." *Roberts*, 556 F.2d at 360; *see also* 24 C.F.R. § 203.500 (2005) ("[t]his subpart identifies servicing practices of lending institutions that HUD considers acceptable for mortgages insured by HUD"); *In re Miller*, 124 F.App'x 152, 155 (4th Cir. 2005) (per curiam) (unpublished opinion) (addressing whether 12 U.S.C. § 1715u(a), NHA's loss mitigation provision, creates private right or action, and observing that "the statute's focus is on regulating mortgagees not protecting mortgagors").   The question whether foreclosure is properly barred when a mortgagee fails to comply with federal loan servicing regulations is a matter to be determined by the terms of the mortgage instructions and applicable state law.   *See Roberts*, 556 F.2d at 361 n.4 (noting that foreclosures are governed by mortgage instruments and applicable state law (citing HUD Mortgage Letter, HM 75-10)); *see, e.g., Fed. Nat'l Mortgage Ass'n v. Moore*, 609 F. Supp. 194, 196 (N.D. Ill. 1985) (observing that failure to comply with HUD servicing regulations can be raised as affirmative defense under Illinois law); *Heritage Bank, N.A. v. Ruh*, 465 A.2d 547, 554 (N.J. Super. Ct. Ch. Div. 1983)(holding that HUD regulations "are discretionary,

not mandatory, and are not a legal prerequisite to foreclosure which is determined by" New Jersey law).

Exercising federal jurisdiction over home foreclosure disputes typically governed by private contract and state law portends a significant transfer of judicial responsibilities from state to federal courts.  HUD statistics show that, for the period October 2004 through July 2005, a total of 261,700 FHA-insured single family home loans were in default more than 90 days.  MONTHLY REPORT TO THE FHA COMMISSIONER, FHA PORTFOLIO ANALYSIS, DATA AS OF JULY 2005, at 12, http://www.hud.gov/offices/hsg/comp/rpts/com/05jul.pdf.  During a comparable period in 2004, almost 297,000 loans were in default. MONTHLY REPORT TO THE FHA COMMISSIONER, FHA PORTFOLIO ANALYSIS, DATA AS OF JULY 2 0 0 4 , a t 1 2 , http://www.hud.gov/offices/hsg/comp/rpts/com/04jul.pdf. Conceivably, many borrowers with FHA-insured loans who seek to avoid foreclosure or to recover for wrongful foreclosure or similar relief could rely on violations of HUD regulations to assert state-law actions in federal court based on federal question jurisdiction, or to bring such claims in state court, triggering a right of removal on the same basis.[6]  By contrast, in *Grable* it was clear that the balance between state and federal judicial

_____

[6]WMB maintains, for example, that Leggette's "counsel here has filed more than one" lawsuit in which borrowers are seeking direct relief based on an alleged violation of HUD regulations.  D. Br. at 5.

responsibilities would not be disturbed by exercising federal jurisdiction, in part because quiet title actions rarely raise contested issues of federal law. *Grable*, 125 S. Ct. at 2368 ("it will be the rare state title case that raises a contested matter of federal law") & 2371 ("[I]t is the rare state quiet title action that involves contested issues of federal law. . . ."). Litigating state-law foreclosure lawsuits such as Leggette's in a federal forum thus "threaten[s] to affect . . . the normal currents of litigation," in which foreclosure proceedings are generally litigated in state courts. *Id.* at 2371.[7]

*Grable* also notes that, although the absence of a federal private right of action is not dispositive of "the 'sensitive judgments about congressional intent' that § 1331 requires," *id.* at 2370 (discussing and quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)), it is "relevant to" making such judgments, *id.* at 2372. In *Merrell Dow* the Court treated "the

---

[7]In a pre-*Grable* decision, Judge Godbey remanded a removed action in which the plaintiff alleged that the defendant mortgagee had wrongfully foreclosed, in violation of HUD regulations incorporated into the deed of trust, and the removing defendant alleged federal question jurisdiction on the basis of the incorporated regulations. *See Myers v. Countrywide Home Loans, Inc.*, 368 F. Supp. 2d 587, 588 (N.D. Tex. 2005). Judge Godbey held that there was no federal question subject matter jurisdiction because only a state right was at issue. *Id.* at 589. WMB contends that *Myers* is wrongly decided and is in any event called into question by the Supreme Court's subsequent decision in *Grable*. Regardless whether the reasoning of *Myers* survives *Grable*, it illustrates that lawsuits like the present one could become common fare in federal court—filed directly or via removal—if the courts uphold federal question jurisdiction.

combination of no federal cause of action and no preemption of state remedies . . . as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Grable*, 125 S.Ct. at 2370.  It viewed the absence of a cause of action as significant under the circumstances, because "exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* It reasoned that, "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.  And that would have meant a tremendous number of cases." *Id.*  The Court explained that

> [a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.  Expressing concern over the increased volume of federal litigation, and noting the importance of adhering to legislative intent, *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law solely because the violation of the federal statute is said to create a rebuttable presumption of negligence under state law.

*Id.* at 2370-71 (citations, internal brackets and quotation marks, and ellipsis omitted).

This reasoning applies with similar force to the present case.

Several circuits have refused to imply a private right of action under the NHA and its implementing regulations. *See Moses v. Banco Mortgage Co.*, 778 F.2d 267, 272-73 n.2 (5th Cir. 1985) (citing cases, although declining to decide this issue). The Fifth Circuit has indicated agreement with these courts. *See Roberts*, 556 F.2d at 361-62 (holding that no private cause of action existed under HUD Handbook). It is improbable that Congress, having opted not to create a private right of action for violations of the NHA or regulations promulgated thereunder, would have intended to shift from state to federal courts potentially massive numbers of foreclosure-related lawsuits.[8]

Strictly construing the removal statute in favor of remand, the court concludes that WMB has failed to meet its burden of establishing that Leggette presents a claim that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368; *see also Wisconsin v. Abbott Labs.*, 2005 WL 2407669, at *28 (W.D. Wis. Sept. 29, 2005) (holding removal improper where plaintiff's claims presented substantial and

---

[8]The absence on Congressional intent to transform the federal courts into tribunals for adjudicating state-law foreclosure litigation involving FHA loans stands in stark contrast, for example, with the intent Congress manifested in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Although ERISA has shifted to federal court many types of claims that would otherwise have been litigated in state courts, the federal courts have repeatedly recognized that this was Congress' clear intent when it enacted ERISA.

disputed question of federal law but disturbed balance of state and federal judicial responsibilities).

III

In her motion, Leggette requests that she be awarded her costs and attorney's fees incurred as a result of removal.   Under 28 U.S.C. § 1447(c), "[t]he decision to award fees is a matter of discretion." *Fathergill v. Rouleau*, 2003 WL 21467570, at *2 (N.D. Tex. June 23, 2003) (Fitzwater, J.).   The court denies her request. Leggette filed this case in state court on October 31, 2003.   WMB removed it to this court on December 2, 2003, and it moved for summary judgment on January 14, 2005.   It was not until May 23, 2005 that Leggette moved to remand the case to state court. Although, as the court notes *supra* at note 3, her failure to move to remand is not fatal to her motion, the court can take her delay into account in deciding whether she should recover her fees and costs under § 1447(c).   Under the circumstance of this case, it would be unjust to impose fees and costs on WMB given Leggette's dilatory conduct, and the request is denied.

*     *     *

For the reasons set out, Leggette's motion to abstain and remand is granted.[9]   The court concludes that it lacks subject matter jurisdiction and, pursuant to § 1447(c), remands this case

---

[9]The court leaves to the state court on remand the determination whether WMB is entitled to relief on its motion for summary judgment.

to the 101st Judicial District Court of Dallas County, Texas.   The
clerk of court shall effect the remand according to the usual
procedure.

     **SO ORDERED.**

October 19, 2005.

 

                         _____

                         SIDNEY A. FITZWATER
                         UNITED STATES DISTRICT JUDGE